UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LANDSMAN & FUNK, P.C.,
    Plaintiff,

 v.

SKINDER-STRAUSS ASSOCIATES,
    Defendant.

Civ. Action No. 08-3610 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

  This is a putative class action brought by the law-firm plaintiff, Landsman & Funk, P.C. ("Landsman"), a New York professional corporation, against defendant Skinder-Strauss Associates ("Skinder"), a New Jersey partnership, for alleged violations of the Telephone Consumer Protection Act ("TCPA"), codified at 47 U.S.C. § 227. Landsman alleges that on July 15, 2008 Skinder sent it an uninvited and unwelcome fax in violation of the TCPA (Am. Compl. ¶ 9), and wishes to serve as named plaintiff in a class action on behalf of aggrieved recipients of "well over ten-thousand unsolicited fax advertisements" allegedly sent by Skinder since July 9, 2005. (Am. Compl. ¶ 14.) In this pre-answer motion, Skinder moves pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the amended complaint for lack of subject matter jurisdiction on both federal question (28 U.S.C. § 1331) and diversity of citizenship (28 U.S.C. § 1332) grounds.

**I. STANDARD OF REVIEW**

  Under Federal Rule of Civil Procedure 12(b)(1), when a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of persuasion. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Because there is no presumption of truthfulness as to plaintiff's allegations, "the existence of disputed material facts will not preclude the trial

1

court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).  When considering a motion to dismiss pursuant to Rule 12(b)(1), a court must discern whether the defendant is mounting a "facial attack" or a "factual attack" to subject matter jurisdiction.  "When considering a facial attack," in which a defendant contends that the facts alleged in the complaint fail to establish jurisdiction, "the Court must consider the allegations of the complaint as true, and in that respect such a Rule 12(b)(1) motion is similar to a Rule 12(b)(6) motion." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (internal citations and quotations omitted).  If, however, the challenging party presents a factual challenge contrary to the pleadings, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

Neither Skinder's submissions on this motion nor Landsman's opposition papers raise factual disputes relevant to the propriety of this Court's jurisdiction over the putative class action.  In light of the purely "facial" nature of Skinder's jurisdictional challenge, in determining whether federal question or diversity of citizenship exists, the Court will accordingly confine its analysis to the pleadings.

II.    FACTS

The operative facts in the pleadings, for jurisdictional purposes, are few.  In connection with Skinder's publication of the *New York Lawyer's Diary*, Landsman alleges that Skinder transmitted an "unsolicited" single facsimile advertisement from Skinder's New Jersey offices to Landsman's New York offices on July 15, 2008, "without Plaintiff's express invitation or permission."  (Am. Compl. ¶¶ 9-10.)  Beyond that, Landsman also alleges that it is qualified to represent a class of plaintiffs composed of recipients of "well over ten-thousand (10,000) unsolicited fax advertisements, advertising the commercial availability or quality of any

property, goods, or services of Defendant," sent "to fax machines and/or computers belonging to thousands of persons all over." (Compl. ¶ 14.)

Because the current jurisdictional challenge centers on the type of action brought—a TCPA claim—rather than underlying specific facts, the background as succinctly set forth *supra* is adequate.

## III. DISCUSSION

Landsman asserts federal question jurisdiction under 28 U.S.C. § 1331, as well as diversity-of-citizenship jurisdiction pursuant to 28 U.S.C. § 1332(d).

### A. Federal Question Jurisdiction - § 1331

Skinder moves to dismiss on grounds that there is no federal question jurisdiction for TCPA claims as a matter of law. Skinder submits that the federal question issue is controlled by Third Circuit precedent from *Erienet, Inc. v. Velocity Net*, 156 F.3d 513 (3d Cir. 1998), which addressed whether federal courts have jurisdiction over private actions filed under the TCPA. Concluding that "Congress intended that private enforcement suits under the TCPA be brought in state, and not federal, courts," and that the TCPA "preclude[s] federal question jurisdiction over such consumer suits," the Third Circuit dismissed the TCPA claims for lack of subject matter jurisdiction under § 1331. Thus, the *Erienet* court ruled that 47 U.S.C. § 227(b)(3)[1] conferred exclusive jurisdiction on state courts to entertain private suits alleging TCPA violations, and, concomitantly, that federal courts lack federal question jurisdiction over such claims. *See Klein v. Vision Lab Telecomms., Inc.*, 399 F. Supp. 2d 528, 532 (S.D.N.Y. 2005) (citing Third Circuit's *Erienet* precedent in support of proposition that "[w]e recognize that

---

[1] 47 U.S.C. § 227(b)(3) authorizes a person or entity "if otherwise permitted by the laws or rules of court of a State," to sue for a violation of the TCPA "in an appropriate court of that State" for statutory damages and an injunction against further violations.

numerous Courts of Appeal have addressed—and unanimously rejected—removal of § 227(b)(3) claims based on federal question jurisdiction.").

In arguing that the Third Circuit's controlling *Erienet* precedent is no longer applicable, Landsman relies upon the Seventh Circuit decision of *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005), which found that a TCPA claim could be heard by a federal court under federal question jurisdiction or diversity jurisdiction. *See Brill*, 427 F.3d at 451-52. This Court, however, "is bound by controlling decisions of the Third Circuit," not by decisions of other circuits. *Pittston Co. v. Sedgwick James, Inc.*, 971 F. Supp. 915, 919 (D.N.J. 1997). And, "[i]t is, of course, patent that a district court does not have the discretion to disregard controlling precedent simply because it disagrees with the reasoning behind such precedent." *Vujosevic v. Rafferty*, 844 F.2d 1023, 1030 (3d Cir. 1988). Significantly, since *Brill* was decided, the District of New Jersey has continued to follow *Erienet* precedent in finding that "suits brought under the TCPA cannot be filed in or removed to federal court based on federal question jurisdiction." *Margulis v. Resort Rental, LLC*, No. 08-1719, 2008 WL 2775494, *1 n.1 (D.N.J. July 14, 2008) (Martini, J.). Accordingly, the Court is satisfied that where plaintiff is a private litigant attempting to litigate TCPA claims in federal court, *Erienet* controls.

### B. Diversity of Citizenship Jurisdiction - § 1332

Diversity jurisdiction could also provide an independent jurisdictional basis even if state courts maintain jurisdiction to the exclusion of the federal courts under § 1331. *See Gottlieb v. Carnival Corp.*, 436 F.3d 335, 339 (2d Cir. 2006). Landsman asserts that jurisdiction is proper under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005 ("CAFA"), in that its allegations support that the putative class has no fewer than 100 members (§ 1332(d)(5)(B)), that "minimal diversity" is satisfied because one class member is a citizen of a

4

different state than any one of the defendants (§ 1332(d)(2)(A)), and that the aggregate of the class claims total at least $5,000,000.  (§ 1332(d)).

The allegations in Landsman's complaint facially support that diversity of citizenship jurisdiction could exist pursuant to § 1332(d).  With regard to members of the class, Landsman alleges that "well over ten-thousand (10,000) unsolicited fax advertisements" were sent out by Skinder, satisfying the Court that this would result in a class composed of greater than 100 members.  (Am. Compl. ¶ 14.)  The "minimal diversity" required under § 1332(d)(5)(B) is also met because Landsman pleads that it is a New York professional corporation and that Skinder is a New Jersey partnership.  (Am. Compl. ¶¶ 6, 7.)  As to the amount-in-controversy requirement, Landsman's allegations support that § 1332(d)'s $5,000,000 aggregated threshold is apparently adequately pled because Landsman stated—and Skinder does not deny—that Skinder sent out "well over ten-thousand (10,000) unsolicited fax advertisements."  (Am. Compl. ¶ 14.) Landsman is seeking statutory damages of $500 per unsolicited fax under 47 U.S.C. § 227(b), which, when multiplied by the number of faxes allegedly sent, would amount to damages of $5,000,000, thereby *purportedly* meeting the amount-in-controversy requirement for pleading purposes.  (Am. Compl. ¶¶ 3, 14.)

Assuming that the necessary elements of § 1332(d) have been pled for diversity-of-citizenship jurisdiction, and recognizing that *Erienet* does not limit diversity-of-citizenship jurisdiction for TCPA actions, pursuant to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) the Court must decide which states' law would apply.  *See*, *e.g.*, *Watson v. NCO Group, Inc.*, 462 F. Supp. 2d 641, 648 (E.D. Pa. 2006) ("This Court is convinced that diversity of citizenship remains a viable means to establish subject matter jurisdiction over a TCPA claim.").

"When a district court's jurisdiction is predicated on diversity of the parties . . . the court must determine whether, under [*Erie*], a matter is substantive or procedural." *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008) (citing *Simmons v. City of Phila.*, 947 F.2d 1042, 1085 (3d Cir. 1991)). "If the matter is determined to be substantive, and a choice-of-law question is presented, the court must then perform a choice-of-law analysis to determine which state's substantive law applies." *Id.*

Landsman, the New York-domiciled plaintiff, filed this suit in New Jersey, and advocates for the application of New Jersey law. Skinder, the New Jersey-domiciled defendant, advocates for the governance of New York law. In *Bonime v. Avaya, Inc.*, 547 F.3d 497, 500 (2d Cir. 2008), the Second Circuit ruled that "a class action for statutory damages under the TCPA is not actionable in New York state court" in light of C.P.L.R. 901(b), "which provides that 'Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.'" *Id.* (quoting C.P.L.R. § 901(b). In contrast, New Jersey courts do not prohibit class actions for statutory damages, and where New Jersey law applies, such TCPA suits are permitted.

Critically, the statutory language of the TCPA creates a private right of action only "if otherwise permitted by the law or rules of court of a State." 47 U.S.C. § 227(b)(3). Uniquely with respect to the TCPA, it is settled that state law is substantive because "the TCPA specifically provides that state law will determine whether a cause of action lies in any given state and what types of actions are permissible." *Rudgayzer & Gratt v. LRS Comms., Inc.*, 789 N.Y.S.2d 601, 603 (N.Y. App. Term 2004). Certainly, no law could be more substantive than New York's C.P.L.R. § 901(b), which would foreclose the possibility of this Court having

6

jurisdiction over the putative class action if New York law were applied in a choice-of-law analysis. For that reason the Court must perform a choice-of-law analysis to decide whether the substantive law of New Jersey or New York is to be applied. The outcome of such a choice-of-law analysis will be determinative as to whether diversity-of-citizenship jurisdiction may be maintained by the Court.

In considering this issue, Skinder's reply brief (D.E. 25) directed the Court's attention to the New Jersey Supreme Court's November 24, 2008 decision in *P.V. v. Camp Jaycee*, 197 N.J. 132 (2008). As recently as the filing of Skinder's moving brief in October 2008, the conflict of laws analysis applied in New Jersey to tort claims was a conventional "governmental interest" test. *See Fu v. Fu*, 160 N.J. 108, 118 (1999) (observing that New Jersey applies a "government interest" test rather than the "the traditional rule of *lex loci delicti*"). In *Camp Jaycee*, however, the New Jersey Supreme Court announced that although it would thereafter "continu[e] to denominate [its] standard as a kind of governmental interest test," it would "now apply the Second Restatement's most significant relationship standard in tort cases." *Camp Jaycee*, 197 N.J. at 142-43. "Under that standard," the court stated, "the law of the state of the injury is applicable unless another state has a more significant relationship to the parties and issues." *Id.* at 143. "The Second Restatement assessment takes place on an issue-by-issue basis" and "is qualitative, not quantitative." *Id.* (citing *Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28, 32 (3d Cir. 1975).).

New Jersey's "most significant relationship" choice-of-law test is a two-step analysis in which the Court must first "examin[e] the substance of the potentially applicable laws" to determine whether an actual conflict exists. *Camp Jaycee*, 197 N.J. at 143 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). Here, a conflict of laws is clearly presented for the

7

reasons discussed above. Accordingly, the Court must "turn to the Restatement analysis." *Id.* at 144.

The initial principle to weigh is *§ 146* of the *Restatement (Second) of Conflict of Laws* (1971), which states:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in *§ 6* to the occurrence and the parties, in which event the local law of the other state will be applied.

"*Section 146* recognizes the intuitively correct principle that the state in which the injury occurs is likely to have the predominant, if not exclusive, relationship to the parties and issues in the litigation." *Camp Jaycee*, 197 N.J. at 144. Once the state in which the injury occurred is identified, "[i]t is from that vantage point that we turn to the remaining contacts set forth in *sections 145* and the cornerstone principles of *section 6*" to conclude whether the state that was *not* the site of the injury has a more significant with the injurious occurrence and the parties than the state where the injury occurred. *Id.* at 144-45. "Once the presumptively applicable law is identified, that choice is tested against the contacts detailed in *section 145* and the general principles outlined in *section 6* of the Second Restatement." *Id.* at 135. The contacts enumerated in *§ 145* are:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

*Restatement, § 145(2)(a)-(d)*. It is "[o]nly" by a finding that the contacts in *§ 145* form the "most significant relationship" that they can "overcome the presumptive rule of *section 146*." *Camp Jaycee*, 197 N.J. at 145. Under the *Camp Jaycee* precedent, courts apply the principles of

8

*section 6* to measure the significance of the contacts; to see whether these principles magnify or diminish the importance of the contacts. *See id.* "Reduced to their essence, the *section 6* principles are: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Camp Jaycee*, 197 N.J. at 147 (internal citation and quotation omitted).

Landsman has correctly posited that "[c]laims under the TCPA sound in tort," thereby confirming that the *Camp Jaycee* choice-of-law precedent is appropriately applied in this action. (Landsman Opp'n Br. 17 (citing *U.S. Fax Law Ctr., Inc. v. iHire, Inc.*, 362 F. Supp. 2d 1248, 1252 (D. Colo. 2005); *Weber v. U.S. Sterling Secs., Inc.*, 282 Conn. 722, 728 (2007).) Because Landsman allegedly received the July 15, 2008 fax in its New York City offices, on its New York facsimile line (Am. Compl. ¶¶ 9-10), the Court deems New York as the place of injury for purposes of the TCPA. *See*, *e.g.*, *Weber v. U.S. Sterling Secs., Inc.*, 282 Conn. 722, 737 (2007) (applying New York law under place-of-injury rule in TCPA action because fax was received in New York despite Connecticut forum).

Having established the presumption that New York law should apply, the Court must consider New Jersey's contacts in this case, guided by *§ 145*. Foremost, Landsman received the fax in New York, on a New York telephone/facsimile line. Although defendant Skinder's principal place of business—and offices from which the offensive fax was sent—are located in New Jersey, no other factor militates in favor of New Jersey's relationship. The parties are equally divided in their residency in that Landsman is a New York professional corporation and Skinder is a New Jersey partnership. The final factor—"the place where the relationship, if any, between the parties is centered"—raises the most substantive consideration in the analysis.

9

Skinder's offensive fax allegedly related to the *New York Lawyer's Diary* publication, an annual directory that concerns the practice of law in New York. Taking the facts as alleged, Skinder was soliciting Landsman to purchase advertising space in the "area of practice" section of its publication, which would have provided litigants seeking New York counsel guidance with respect to various firms' practice areas. (*See* Am. Compl., Exh. A.) Accordingly, if the parties' loose "relationship" could be characterized as anything, it centered on the sale of advertising space in a publication that would be used by New York attorneys regarding the practice of law in New York. New Jersey's relationship is anchored by nothing more than Skinder's office location as the origin of the fax transmission. In sum, the factors set forth in *§ 145* only strengthen the presumption that New York law must be applied because—even setting aside the place of injury—New York has the most significant relationship to the injurious occurrence and to the parties.

Pursuant to the *Camp Jaycee* precedent, the Court must look to *Restatement § 6* to "measure the significance of the contacts in order to determine whether the presumption has been overcome." *Camp Jaycee*, 197 N.J. at 143. With regard to "the interests of interstate comity," both New Jersey and New York permit individual TCPA actions to be brought in the state courts, consistent with their tort systems' goal of protecting residents from civil wrongs. The laws of New York and New Jersey diverge, however, where it comes to class actions premised on TCPA liability; New York's C.P.L.R. § 901(b) prohibits class actions for statutory damages whereas New Jersey permits them. If New Jersey law were applied in place of New York law, that choice of law would frustrate "New York's long-standing policy that suits for a penalty may not be brought as a class action absent specific legislative authorization." *Leider v. Ralfe*, 387 F. Supp. 2d 283, 290 (S.D.N.Y. 2005) (discussing policy underlying C.P.L.R. § 901(b)). As the New

York Court of Appeals has found, C.P.L.R. § 901(b) was enacted in response to concerns that recovery "beyond actual damages could lead to excessively harsh results," and beliefs that "there was no need to permit class actions in order to encourage litigation by aggregating damages when statutory penalties and minimum measures of recovery provided an aggrieved party with a sufficient economic incentive to pursue a claim." *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 211 (2007). New Jersey has no strong contrary policy.[2] Because New York's strong policy barring class actions seeking aggregated statutory damages does not meet an equally strong and countervailing policy in New Jersey, then a court should be reluctant to ignore New York's policy where it is presumptively applicable. *See*, *e.g.*, *Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007) ("[I]n evaluating the competing interests of the states and interstate comity, the most significant factor[s] in the tort field, a court must consider whether application of a competing state's law would frustrate the policies of other interested states." (internal citations omitted)).

With respect to each states' interests, the Court observes that New York provides a TCPA remedy to its resident entities in the form of an individual action for statutory damages; and has an interest—as embodied in C.P.L.R. § 901(b)—in preventing class action recovery for TCPA violations. Any interest New Jersey may have in providing class action redress for TCPA claims is absent here, as Landsman is not a New Jersey resident.

As to the administration of justice, the Court recognizes that Landsman has an adequate remedy in New York state courts for statutory damages under the TCPA to the extent it is aggrieved by receipt of the unwelcome fax solicitation from Skinder, as do all other fax recipients allegedly victimized by Skinder. In weighing judicial administration, the Court can

---

[2] This point was recognized in *Freedman v. Advanced Wireless Cellular Comms. Inc.*, 2005 WL 2122304 (N.J. Law Div. June 24, 2005), in which the Law Division concluded that Congress intended TCPA claims be litigated as individual actions and that the TCPA's statutory damages were adequate redress.

11

consider "issues such as practicality and ease of application." *Camp Jaycee*, 197 N.J. at 154. Ostensibly, redress under the TCPA can be obtained by individual litigants in any court of general jurisdiction in New York State. Thus, because the interests of judicial administration weigh in favor of straight-forward, inexpensive adjudication, this factor supports application of New York law.

Having viewed the *Camp Jaycee* choice-of-law factors, as set forth in *Restatement §§ 145* and *146*, through the "prism" of *§ 6*, the Court concludes that application of the law of the place of injury, New York, is the correct result. Applying C.P.L.R. § 901(b), the Court dismisses this putative TCPA class action for lack of subject matter jurisdiction because New York law, as applied under the diversity-of-citizenship jurisdictional basis does not permit class actions seeking aggregated class action damages, which means that Landsman cannot meet the $5,000,000 amount-in-controversy requirement of 28 U.S.C. § 1332(d). In addition to Landsman's failure to meet the § 1332(d) jurisdictional requirements, New York law does not recognize a class action premised on statutory damages such as the TCPA.

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that there is neither federal question jurisdiction under 28 U.S.C. § 1331 nor diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332, and grants the motion to dismiss. An appropriate order will be entered.

/s/Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.