# CONCISE SUMMARY OF THE CASE

Pursuant to 3rd Cir. LAR 33.3, counsel are required to file a concise summary of the case within **14** days of the date of docketing of the Notice of Appeal. Total statement is limited to no more than 2 pages, single-spaced. Counsel may utilize this form or attach a 2 page statement encompassing the information required by this form.

SHORT CAPTION: ___Landsman & Funk, P.C. v. Skinder-Strauss Associates___
USCA NO.:_15-2485_____
LOWER COURT or AGENCY and DOCKET NUMBER:
____District of New Jersey, Case No. 08-cv-03610 (CLW)_____
NAMEOF JUDGE:____Cathy L. Waldor, U.S.M.J._____

Specify who is suing whom, for what, and the subject of this action. Identify (1) the nature of the action; (2) the parties to this appeal; (3) the amount in controversy or other relief involved; and (4) the judgment or other action in the lower court or agency from which this action is taken:

Plaintiff Landsman & Funk ("Plaintiff") filed a class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227, alleging Defendant Skinder-Strauss Associates ("Defendant") sent unsolicited fax advertisements. The parties negotiated a settlement agreement which purportedly provides for a settlement fund of $625,000.00. Appellant Lightman & Associates d/b/a Lightman & Manochi and Glenn A. Manochi ("Appellants") objected. The Court approved the settlement agreement over Appellants' objections on May 18, 2015. Appellants timely filed the Notice of Appeal on June 12, 2015.

LIST and **ATTACH** a copy of each order, judgment, decision or opinion which is involved in this appeal. If the order(s) or opinion(s) being appealed adopt, affirm, or otherwise refer to the report and recommendation of a magistrate judge or the decision of a bankruptcy judge, the report and recommendation or decision shall also be attached.

Opinion, Final Judgment and Order (District Ct. Doc. No 141) is attached hereto.

Provide a short statement of the factual and procedural background, which you consider important to this appeal:

The 2014 settlement agreement covered TCPA violations which occurred during a 45 day period during the summer of 2008. It provided if class members submitted a claim with a copy of the fax, the member received $500.00. A class member, who swore under penalties of perjury he/she received a fax, received $175.00 for the first fax received up to a total of $275.00 (five or more). The settlement agreement provided a fund of $625,000.00 to pay for the submitted

Page 1 of 1

claims, a $10,000.00 incentive payment and class counsel's attorney's fees and costs (counsel sought $208,333.00). After payment of these amounts, the remaining amount of the settlement fund reverts back to Defendant. Prior to the fairness hearing, the claims administrator submitted a report which showed the total dollar amount of submitted claims was $58,325.00.

Identify the issues to be raised on appeal:

1. The Court below found Appellants did not have standing to challenge the settlement agreement. The Court erred in its decision.

2. As approved by the Court below, the class members will receive $58,325.00 and the named plaintiff will receive a $10,000 incentive award. Class counsel will receive $208,333.00 in fees plus $2,389.40 in expenses and over $355,000.00 will revert back to Defendant. The settlement agreement as approved by the Court below is neither fair nor reasonable. Appellants submit the Court below failed to adequately or properly analyze the factors required to approve a class action settlement

3. The $208,333.00 attorneys' fee award to class counsel is more than 3 ½ times the entire amount being paid to class members and is more than 75% of the total dollar amount defendants have agreed to pay to settle the matter. The attorneys' fee amount is neither fair nor reasonable. Appellants submit the Court below failed to adequately or properly analyze the factors required to approve class counsel's fee award.

This is to certify that this Concise Summary of the Case was mailed to the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record this 26th day of June, 2015.

_____
Signature of Counsel

**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LANDSMAN & FUNK, P.C., on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SKINDER-STRAUSS ASSOCIATES, a New Jersey Partnership,<br><br>Defendant. | Civil Action No. 08cv3610 (CLW)<br><br>**OPINION AND FINAL JUDGMENT AND ORDER** |

**THIS MATTER** comes before the Court on Plaintiff's motion for final approval of the class settlement, attorneys' fees, and incentive award as well as on the objection of Lightman & Associates. Pursuant to 28 USC § 636, the parties consented to this Court's jurisdiction. For the reasons set forth below, the motion is granted.

**I.   Background**

Plaintiff initiated this action seeking relief for Plaintiff as well as for class members under the Telephone Consumer Protection Act ("TCPA"), 47 USC § 227, in relation to Defendant's alleged practice of sending thousands of unsolicited fax advertisements. (Amended Complaint, ECF No. 3; Motion for Final Approval of Class Settlement, ECF No. 138.) The TCPA prohibits the "use [of] any telephone facsimile machine, computer, or other device, to send, to a telephone facsimile machine, an unsolicited advertisement." 47 USC § 227(b). The complex history of this case includes a successful motion to dismiss, a successful appeal thereof to the Third Circuit, and a subsequent unsuccessful motion to dismiss. (ECF Nos. 31-32, 42, 83-84, and 91-92.) The parties eventually entered into a Settlement Agreement and sought certification of the class and preliminary approval of the class action settlement. (ECF Nos. 126-28.) The Settlement Agreement

provides for a total settlement fund of $625,000—to be distributed on a sliding scale from $500 to $175 per fax received depending on whether the fax was retained and on how many faxes were received by a claimant—attorney's fees of one-third of the fund, and an incentive award. (Settlement Agreement, ¶¶ 2, 9-11, ECF No. 138-5.) On September 17, 2014, the parties consented to this Court's jurisdiction. (ECF No. 130.) October 27, 2014, the Court, *inter alia*, preliminarily certified the class for settlement purposes and preliminarily approved the class action settlement "subject to the approval and determination of the Court as to the fairness, reasonableness, and adequacy" of the settlement. (ECF No. 133.)

On January 9, 2015, Lightman & Associates, P.C., and Glenn A. Manochi, Esq., ("Objectors") filed an Objection to the class action settlement. (ECF No. 137.) On January 23, 2015, Plaintiff filed its unopposed motion[1] for final approval of the class settlement, attorneys' fees, and incentive award. (ECF No. 138.) On January 29, 2015, the Court held a hearing regarding the "fairness, reasonableness, and adequacy" ("fairness hearing") of the settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure. Counsel for the parties appeared at the fairness hearing, argued that the Objectors lack standing, and argued in support of the settlement. In addition, Plaintiff contended that the requested attorney's fee is fair and reasonable and that the Court should approve an incentive award. The Objectors, through Mr. Manochi, asserted standing and opposed the settlement.

## II. Discussion

### A. Objectors' Standing

The Court first considers the challenge to the Objectors' standing. The Objectors assert standing, argue that the settlement fails to account for "a large segment of potential claimants"

---

[1] Plaintiff also filed a motion for leave to file excess pages. (ECF No. 139.) The Court grants this request.

because potential claimants may not recall or have proof of fax receipt, and further argue that the settlement fund is improperly structured in that unclaimed funds will revert to Defendant and will create excessive fees for Plaintiff's counsel in relation to disbursements to claimants. (Objection to Settlement, ECF No. 137.) The Objectors conclude that the "settlement should be rejected as unfair and unreasonable and the class cannot be certified." (Id.) Plaintiff contends that the Objectors lack standing because they are not part of the class and add that, in any event, the Objectors' arguments are without merit.

Rule 23(e)(4)(A) of the Federal Rules of Civil Procedure provides that "[a]ny class member may object" to a "proposed settlement, voluntary dismissal, or compromise." Importantly, "[a]s Rule 23 confers the right to object upon class members, the Rule itself does not confer standing upon nonclass members." Newberg on Class Actions § 13:22 (5th ed.) (collecting cases).

Here, the Objectors received notice of the class action indicating that they were members of the class[2] and concluded that they met the criteria to be considered such. (Manochi Decl., ¶¶ 3-10, ECF No. 137-1.) Although the Objectors expressed a belief that they received a subject fax, they did not possess a copy of any qualifying fax, "ha[d] no independent recollection that [Defendant] actually sent a fax to [the Objectors] during the [applicable] long ago time period [and,] [a]ccordingly, [the Objectors were] unable to submit a Claim form under penalty of perjury." (Id., ¶¶ 12-13.) The Objectors therefore submitted a modified claim form in which they declined to swear to their belief and instead expressed, "upon information and belief, that [the Objectors] received a [Defendant] fax." (Id., ¶ 13, Ex. B.) The Objectors reiterated these arguments at the fairness hearing held by the Court.

---

[2] Plaintiff stresses that receipt of such an email does not transform the Objectors into class members and that the parties never agreed that those who received notice of the class action are actually class members. (Motion for Final Approval, at 42, ECF No. 138.)

Based on the facts presented, the Court determines that the Objectors lack standing to object because they are not members of the class. Although the Court recognizes that this case concerns events from 2008, the Court is unwilling to presume that the Objectors' have standing and the Objectors offer no authority for such a presumption. Instead, the Objectors carefully sought to identify themselves as class members without certifying as much and insisted that a claimant must overcome "extremely high hurdles [. . .] to submit a valid claim." (Objection, at 9, ECF No. 137.) Moreover, in support of their assertion of standing the Objectors failed, for example, to provide evidence or certifications regarding telephone or facsimile records or invoices from the period at issue.

As set forth more fully below, Court nonetheless rejects the Objectors' arguments that certification and acceptance of the settlement are inappropriate in this matter. In particular, the Court rejects the contention that the settlement fails to account for a large segment of potential claimants. The Court accepts the parties' representations that Defendant "was unable to specifically identify the recipients of the fax advertisements it caused to be sent during the Class Period" but "was able to create a list of likely class members by using the criteria it believed were probably used to create the fax list in 2008[.]" (Motion for Final Approval, at 39-40, ECF No. 138; Keogh Decl., ECF No. 138-4.) Further, the parties ascertained about 20,000 potential claimants. (Id.) The Court likewise understands that one object of the settlement was the parties' concerted effort to avoid further litigation concerning whether class members were sufficiently objectively ascertainable.

**B.  Class Certification**

"[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met." Sullivan v. DB Invs.,

Inc., 667 F.3d 273, 296 (3d Cir. 2011) (en banc) (quoting In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 341 (3d Cir. 2010)) (internal quotations omitted); In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig. (GM Trucks), 55 F.3d 768, 778 (3d Cir. 1995). Moreover, "[t]he factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence[, such that] to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 257–58 (3d Cir. 2009) (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008)) (internal brackets omitted). Thus, the parties must establish by a preponderance that

> 1) the class is so numerous that joinder of all members is impracticable [numerosity]; 2) there are questions of law or fact common to the class [commonality]; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and 4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation].

Fed. R. Civ. P. 23(a).

The Court reiterates its prior finding (ECF No. 133) that this case meets the requirements for class certification, i.e., the parties have established numerosity, commonality, typicality, and adequacy of representation by a preponderance of the evidence. First, the class is so numerous that joinder of all members is impracticable, as Plaintiffs credibly indicate that there are thousands of class members and over three hundred confirmed claims. (Krivitzky Decl., ¶ 7, ECF No. 127-6; Keogh Decl., ¶¶ 5-7, 18.) Next, there are common questions of law and fact common to the class because this case concerns the confined issues of the nature and legality of Defendant's fax transmissions to class members and these issues apply nearly uniformly to class members and would vary little among the members of the class. Similarly, the claims of Plaintiff are typical of

the claims resolved through the settlement due to the narrow nature of claims presented, i.e., each class member was subjected to the same practice as Plaintiff. Finally, Plaintiff is capable of fairly and adequately protecting the interests of the class in connection with the settlement. As evidenced by the thorough and effective advocacy employed throughout this litigation as well as by the considerable experience of Plaintiff's counsel, it is clear that Plaintiff enlisted competent counsel. (Bellin Decl., ECF No. 127; Landsman Decl., ECF No. 127-5; Krivitzky Decl., ECF No. 127-6; Bellin Decl., ECF No. 138-2; Landsman Decl., ECF No. 138-3.) Similarly, Plaintiff's interests in this matter are sufficiently aligned with those of others class members given the essentially identical nature of the claims of Plaintiff and class members.

The Court is likewise satisfied that certification is appropriate pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, i.e., "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Pertinent to these findings are

> A) the class members' interests in individually controlling the prosecution or defense of separate actions; B) the extent and nature of any litigation concerning the controversy already begun by or against class members; C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

First, it is plain that common questions of law and fact common to the class predominate over any questions affecting only individuals because, again, this case concerns the confined issues of the nature and legality of Defendant's fax transmissions to class members; these issues apply nearly uniformly to class members and would vary little by individual. Moreover, the class members' interests in individual control is minimal on account of the modest amount of damages

available in comparison to cost of maintaining an individual suit. See, e.g., Agne v. Papa John's Int'l, Inc., 286 F.R.D. 559, 571 (W.D. Wash. 2012) (discussing insufficiency of five hundred dollars to compensate one for the time and effort of litigating a claim). Next, the Court accepts the certification of Plaintiff's counsel that no class members have brought similar claims. (Bellin Decl., ¶ 6, ECF No. 127.) Thus, the second and third factors under Rule 23(b) are resolved in favor of class certification in this Court because no other suit or forum is at issue. And as to the prospect of difficulties in managing a class action, the Court concludes that, despite the considerable numbers of claimants and potential claimants, there is no indication of difficulty in administration of the action. A class action therefore is the superior means for resolving this suit.

### C.      Fairness of Settlement

Having found that the parties established by a preponderance of the evidence that class certification is appropriate, the Court now considers the proposed settlement (ECF No. 138-5). "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." GM Trucks, 55 F.3d at 784-85. Before a class action can be settled, the settlement agreement must be approved; this entails a determination that the proposed settlement is fair, reasonable, and adequate, and that it is not the product of fraud or collusion. Fed. R. Civ. P. 23(e); In re Prudential Insurance Company of America Sales Practice Litigation, 148 F.3d 283, 316 (3rd Cir. 1998); Stoetzner v. United States Steel Corp., 897 F.2d 115, 118 (3d Cir. 1990). In addition, "in cases where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously[,]" a heightened standard applies "to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members." Pet Food Products, 629 F.3d at 350 (internal quotations and citations omitted).

The decision whether or not to approve a proposed class action settlement rests in the Court's sound discretion. Bryan v. Pittsburgh Plate Glass Co., et al., 494 F.2d 799, 801 (3d Cir. 1974).

The Court must examine the following factors to evaluate a proposed class action settlement: 1) the complexity and duration of the litigation; 2) the reaction of the class to the settlement; 3) the stage of the proceedings and the amount of discovery completed; 4) the risks of establishing liability; 5) the risks of establishing damages; 6) the risks of maintaining a class action; 7) the ability of the defendants to withstand a greater judgment; 8) the range of reasonableness of the settlement in light of the best possible recovery; and 9) the range of reasonableness of the settlement in light of the attendant risks of litigation. In re Baby Products Antitrust Litig., 708 F.3d 163, 174 (3d Cir. 2013) (indicating that a "district court must consider" the Girsh factors) (citing Girsh v. Jepson, 521 F.2d 153, 156-157 (3rd Cir. 1975)). An "additional inquir[y] for a thorough analysis of settlement terms is the degree of direct benefit provided to the class." Baby Products, 708 F.3d at 174 (noting that other "prudential" and "permissive and non-exhaustive" factors are set forth in Prudential, 148 F.3d at 323). Importantly, "[t]he proponents of the settlement bear the burden of proving that these factors weigh in favor of approval." GM Trucks, 55 F.3d at 785-86 (citations omitted).

The Court first considers the related factors of complexity and duration of the litigation as well as the stage of the proceedings. This action has been vigorously litigated since its commencement in 2008. During that period, a considerable amount of time, money and effort has been expended by all parties. Indeed, the docket itself provides ample evidence of such, as this matter has seen paper discovery, depositions, significant motions practice, an appeal to the Third Circuit, extensive settlement negotiations, preliminary approval of settlement, and now the final stage of settlement. But for the instant settlement, this matter would continue to be thoroughly

- 8 -

litigated from class certification, through pretrial preparations, and to trial. (Krivitzky Decl., ECF No. 127-6; Bellin Decl., ECF No. 138-2.) The savings of time and resources are thus considerable and the Court credits the opinions of experienced counsel as to settlement value as well as the strengths and weaknesses of their relative positions. These factors accordingly weigh strongly in favor of approval of the settlement.

To assess the reaction of the class to the settlement, the Court considers "whether members of the class support the settlement." Ins. Brokerage, 282 F.R.D. at 103 (citing In re Lucent Techs., Inc., Sec. Litig., 307 F.Supp.2d 633, 643 (D.N.J. 2004)). Here, there are thousands of potential class members, over three hundred confirmed claims, with zero exclusions and one objection. (Krivitzky Decl., ¶ 7, ECF No. 127-6; Keogh Decl., ¶¶ 5-7, 12-13, 16-18, ECF No. 138-4.) The number of exclusions and objections are thus exceptionally small in relation to the size of the potential and confirmed class. Such a discrepancy weighs in favor of approval of the settlement. See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005), as amended (Feb. 25, 2005) (holding that district court did not abuse its discretion in finding the absence of substantial objections by class members weighed in favor of approval).

The Court next considers the risks of establishing liability and damages. It would be expected that, as discussed above, defense counsel would diligently litigate these issues if the matter were to proceed in the absence of immediate settlement. The Court recognizes, for example, the following contestable liability issues set forth by Plaintiff:

> 1) whether each individual fax recipient had specifically authorized the transmission or had an established business relationship with Defendant; 2) whether each individual fax communication complied with the opt-out notice requirements of the TCPA; and 3) whether each individual fax transmission qualified as an advertisement for the purposes of the TCPA.

(Motion for Final Approval, at 22, ECF No. 138-1.) Moreover, the burden of proving willful or knowing violations under the TCPA offers an uncertain prospect of success. In addition to these risks, Plaintiff would have to invest considerable additional time and resources to pursue the matter. These factors also weigh strongly in favor of approval of the settlement.

As to the risks of maintaining a class action through trial, in light of the history of this case, there is a substantial risk that any decision granting class certification or finding in favor of the class on the merits would be appealed. Furthermore, the Court recognizes the difficulty of proceeding individually or as a subclass. Thus, this factor weighs in favor of approval of the settlement.

Next, in light of the fact that the Settlement Agreement is the product of extensive negotiations and is presented subsequent to protracted litigation, the Court accepts Plaintiff's representation that Defendants lack the ability withstand a greater judgment. Thus, this factor weighs in favor of approval of the settlement.

Finally, the Court considers the range of reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation. These "factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case [and these factors test for] reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 538 (3d Cir. 2004) (citing Prudential, 148 F.3d at 322). As discussed above, the Court recognizes the high level of advocacy displayed in this matter along with the uncertain prospects of ultimate success for either side. The Settlement Agreement allows for the statutory maximum recovery of $500 per fax received and retained as well as a sliding scale down to $175 per fax, depending on the number received, for those who did not retain faxes but declare that they

received them. In light of the uncertainty and burden which inhere to continued litigation as well as the statutory limit on recovery, the Court finds that these concrete settlement amounts are reasonable. These factors accordingly weigh in favor of approval of the settlement.

In conclusion, the Court finds by a preponderance that the nine Girsh factors weigh in favor of approval. The settlement was reached subsequent to negotiations among experienced counsel in a thoroughly litigated case. Furthermore, class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members. Therefore, the Court concludes that the settlement fund of $625,000 represents a fair, reasonable, and adequate result for the class considering the substantial risks and strains of further litigation as well as the immediate benefits provided by the settlement.[3]

## D. Fairness of Attorneys' Fees

The awarding of attorneys' fees in a class action settlement is within the Court's discretion, provided that the Court thoroughly analyzes and reviews an application for such fees. Rite Aid, 396 F.3d at 299; In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 727 (3d Cir. 2001). This review is necessary even where the parties have consented to the proposed attorneys' fees because of the risk that the "lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees." GM Trucks, 55 F.3d at 820; In re AmerisSoft Corp. Sec. Litig., 210 F.R.D. 109, 128 (D.N.J. 2002).

To determine appropriate attorney's fees, courts generally apply either the lodestar method or the percentage-of-recovery method. Rite Aid, 396 F.3d at 300. The lodestar method is usually applied in statutory fee shifting cases because it "reward[s] counsel for undertaking socially

---

[3] Although no presumption of fairness was necessary to reach this result, the Court nonetheless notes that such a presumption would apply to this matter because "1) the settlement negotiations occurred at arm's length; 2) there was sufficient discovery; 3) the proponents of the settlement are experienced in similar litigation; and 4) only a small fraction of the class objected." Warfarin, 391 F.3d at 535 (citing Cendant, 264 F.3d at 232 n. 18).

beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." Id. at 300 (citing Prudential, 148 F.3d at 333). The percentage-of-recovery method is preferred in common fund cases because it permits attorney's fees to be deducted directly from the settlement fund "in a manner that rewards counsel for success and penalizes it for failure." Id.

The Court considers the following factors to determine reasonableness of attorney's fees in a class action settlement where fees are calculated as a percentage of a common fund:

> 1) the size of the fund created and the number of persons benefitted;
> 2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
> 3) the skill and efficiency of the attorneys involved; 4) the complexity and duration of the litigation; 5) the risk of nonpayment;
> 6) the amount of time devoted to the case by plaintiffs' counsel; and
> 7) the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 193, 195 n.1 (3d Cir. 2000) (citing Prudential, 148 F.3d at 336-40; GM Trucks, 55 F.3d at 819-22). Because the facts of each case are different, the factors "need not be applied in a formulaic way" and some factors may be afforded greater weight than others. Rite Aid, 396 F.3d at 301; Gunter, 223 F.3d. at 195 n.1. In addition to considering the seven factors, courts are advised to cross-check the attorneys' fees proposed under the percentage-of-recovery method by comparing them to the amount the attorneys would have earned under the lodestar method. Rite Aid, 396 F.3d at 300; Gunter, 223 F.3d. at 195 n.1.

Plaintiff's counsel seek a one-third percentage fee of the settlement fund, which is $208,333.00 plus $2,389.40 in expenses, and note that, according to the lodestar method, they accumulated fees of $106,716.12.[4] (Motion for Final Approval, at 65, ECF No. 138-1; Settlement Agreement, ¶ 10, ECF No. 138-5; Bellin Decl., ¶¶ 10-13, ECF No. 138-2.) Because the factors the

---

[4] Plaintiff indicates that this amount is reduced from $125,348.12 to account for fees received "related to the appeal to the Third Circuit in the two companion cases that were settled." (Bellin Decl., ¶¶ 12-13, ECF No. 138-2.)

- 12 -

Court considers in assessing the reasonableness of the proposed attorney's fees overlap with those for considering class certification and settlement fairness, the Court incorporates the findings set forth above. In particular, the following facts weigh heavily in favor of approving attorney's fees: 1) the attorneys involved are of a high skill level and experienced in this type of litigation; 2) the attorneys committed hundreds of hours to this complex matter through its lengthy history at the district and appellate levels; 3) the attorneys settled this case well before trial or further appeal and thus before the onset of a substantial additional legal fees; and 4) none of the proposed class members objected to the attorney's fees.[5] Moreover, the proposed fee is about twice the lodestar fee, which is within the acceptable range and reasonable in consideration of the nature of this litigation and all the factors considered above. See Cendant, 243 F.3d at 742 (observing that "multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied") (quoting Prudential, 148 F.3d at 341) (internal quotations and punctuation omitted); Rite Aid, 396 F.3d 294, 307 (noting that the "multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award"). Plaintiff's thorough recitation of the applicable law and its accompanying collection of comparable cases bolster the Court's finding that the proposed fee is reasonable. (Motion for Final Approval, at 58-63, ECF No. 138-1.) Similarly, the reverter element of the settlement is fair and reasonable because, for all the reasons stated herein, the Court finds no indicia of self-dealing by counsel and finds that counsel has met its responsibility to seek an award that adequately prioritizes direct benefit to the class. See Baby Products, 708 F.3d at 178 (indicating that it is "appropriate for the

---

[5] Notwithstanding the fact that the Objectors lack standing, the Court reiterates that, "as a fiduciary responsible for protecting the rights of absent class members, the Court is required to 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.'" Cendant, 264 F.3d at 231 (quoting GM Trucks, 55 F.3d at 785). The Court thus duly considered the Objectors' arguments in reaching the factual and legal conclusions herein.

court to decrease the fee award" where counsel had not met its responsibility); see also Boeing v. Van Gemert, 444 U.S. 472, 480-481 (1980) (attorney's fees in reverter cases should be calculated based on the entire common fund, as opposed to by the amount claimed by class members).

### E. Incentive Award

Plaintiff seeks an incentive award of $10,000. (Motion for Final Approval, at 65, ECF No. 138-1; Settlement Agreement, ¶ 11, ECF No. 138-5.) Incentive awards to a class representative may be appropriate for the following reasons:

> 1) just as with class counsel, the class representatives have conferred a benefit on all class members by their willingness to bring the litigation; 2) class representatives should be rewarded for taking action that is in the public interest; and 3) public policy favors compensation for class representatives for taking on risks of litigation on behalf of absent class members.

Sullivan v. DB Investments, Inc., 2008 WL 8747721, at *37 (D.N.J. May 22, 2008). Here, the Court is satisfied that the requested award is fair and reasonable because, as certified by Plaintiff and Plaintiff's counsel and as is evident from the record, Plaintiff conferred a benefit to the class and provided significant assistance in the case by collecting facsimiles, commencing the litigation despite the risks involved, participating in formulating and executing litigation strategy, participating in discovery with respect to disclosures and deposition, and working with counsel regarding settlement. (Landsman Decl., ECF No. 138-3; Bellin Decl., ECF No. 138-2.)

## III. Conclusion

In light of the foregoing, the class is certified and the Settlement Agreement is approved as fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**ACCORDINGLY, IT IS** on this 18th day of May, 2015,

**ORDERED** that Plaintiff's motion for final approval of the class settlement, attorneys' fees, and incentive award is **GRANTED**;

**FURTHER ORDERED** that this Order incorporates by reference the terms of the Settlement Agreement; and

**FURTHER ORDERED** that the Clerk shall terminate ECF Nos. 138 and 139.

*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**